UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JAMIE ALLEN W., <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No.  4:23-CV-00202-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Jamie Allen W.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 15) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff is a forty-nine-year-old man who suffered a traumatic brain injury in 2009 as a result of a motorcycle accident.  Plaintiff alleges that he is unable to work due to complications from the accident, including back problems, epilepsy, headaches, blindness in one eye, anxiety, and depression.  AR 25, 117-118, 403.  Petitioner has applied for disability benefits twice. Petitioner first filed an application for social security disability income ("SSDI") and supplemental security income ("SSI") in October 2017, alleging a disability onset date of January 15, 2016.  AR 115.  The claim was denied at all levels.  AR 115-134.

**MEMORANDUM DECISION AND ORDER - 1**

In July 2020, Plaintiff filed his second application for benefits. Petitioner continued to allege disability due to the same conditions. Pt.'s Br. at 1 (Dkt. 15); *see also* AR 21, 25, 117-118, 134. Petitioner asserted a disability onset date of August 17, 2019. AR 22.

As with his previous claim, Petitioner's current claim was denied initially and on reconsideration. AR 21. Once again, Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). On February 10, 2022, the claim went to a hearing before a different ALJ than his first claim. AR 21. On April 29, 2022, the ALJ issued a decision that was unfavorable to Petitioner. AR 18-36.

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-7.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises three points of error. First, Petitioner contends that the RFC does not properly reflect his moderate limitations in concentration, persistence, and pace. Pt.'s Br. at 10-13 (Dkt. 15). Second, Petitioner maintains that the ALJ failed to discuss or evaluate the consulting examiner's opinions about his mental health. *Id.* at 9-10, 13-14. Finally, Petitioner argues that the ALJ improperly rejected the consulting examiner's opinions about his inability to engage in prolonged standing. *Id.* at 14-15.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

**MEMORANDUM DECISION AND ORDER - 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable

**MEMORANDUM DECISION AND ORDER - 4**

impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

**MEMORANDUM DECISION AND ORDER - 5**

Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: a remote traumatic brain injury, a headache disorder, a seizure disorder, blindness in the right eye, anxiety, and depression.  AR 25.  The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that he cannot work around moving mechanical parts and is limited to repetitive unskilled tasks.  AR 29.  Based on the testimony of a vocational expert (a "VE"), the ALJ concluded that these limitations would prevent Petitioner from returning to his past work as a maintenance mechanic or a dump truck driver.  AR 34.  The ALJ found, however, that Petitioner's limitations would not prevent him from performing an alternative range of unskilled light jobs, including working as a housekeeper, merchandise marker, or garment sorter.  AR 34-35.  The ALJ, therefore, found that Petitioner was not disabled.  AR 36.

## DISCUSSION

I. Petitioner's Mental Health

    a. *The ALJ's Findings*

Since his motorcycle accident, Petitioner has suffered from a seizure disorder, which is well-controlled with medication, as well as chronic headaches, anxiety, and depression.  AR 30-31, 500, 567, 637, 667-668. At Steps Two and Three, the ALJ considered the severity of these mental conditions.  This analysis required the ALJ to evaluate Petitioner's functioning in four broad mental domains, known as the "paragraph B" criteria.  20 C.F.R. § 404.1520a.  These domains are: (i) understanding, remembering, and applying information; (ii) interacting with

others; (iii) concentrating, persisting, and maintaining pace; and (iv) adapting or managing oneself. § 404.1520a(c)(3). Limitations in these areas are rated using a five-point scale: none, mild, moderate, marked, or extreme. § 404.1520a(c)(4).

The ALJ found that Petitioner had (i) moderate limitations understanding, remembering, and applying information, (ii) moderate limitations concentrating, persisting, and maintaining pace, but (iii) only mild limitations in the remaining two domains.[1] AR 27-28. The ALJ cited to a range of evidence to support his findings, including the report of the consulting examiner, Ralph D. Heckard, M.D. For example, the ALJ emphasized that Petitioner performed activities of daily living independently; could pay bills and handle a savings account; was able to work full time in the summer of 2020; and was able to interact with medical professionals with only one instance of needing redirection, which was observed by Dr. Heckard. AR 27. The ALJ stressed that Dr. Heckard found Petitioner's memory to be intact. *Id.* Finally, the ALJ noted that:

> Dr. Heckard found the claimant to have bouts of inattentiveness with the need for redirection during his examination (Exhibit B7F). However, the majority of mental status examinations found the claimant alert and oriented during the period at issue (Exhibits B1F/5, B3F/6, 8, B7F/3, B8F, B10F/4, 7, B11F/7, B12F, B13F/5 & B15F/2).

AR28. Taking all this evidence into account, the ALJ determined that Petitioner's mental health conditions qualified as severe but were not presumptively disabling. AR 25-29.

The ALJ continued, therefore, to translate Petitioner's limitations into an RFC. Relevant here, the ALJ included several provisions in the RFC reflecting Petitioner's mental health issues. Most notably, the ALJ restricted Petitioner to routine and repetitive unskilled tasks. AR 29. In adopting this formulation of the RFC, the ALJ credited the opinions of two reviewing

---

[1] Petitioner does not challenge these conclusions or argue that he was more limited in the paragraph B domains than the ALJ determined.

**MEMORANDUM DECISION AND ORDER - 7**

consultants, Mack Stephenson, Ph.D. and Barney Greenspan, Ph.D., who both found that Petitioner was able to perform simple, routine work.  AR 33, 192.

      b. *Whether a Limitation to Simple, Repetitive Work Adequately Reflects Moderate Limitations in Concentration, Persistence, and Pace*

Petitioner's first challenge on appeal is that restricting Petitioner to simple, repetitive tasks did not reasonably incorporate Petitioner's moderate limitations in concentration, persistence, and pace into the RFC.  This is a well-worn issue.

The leading Ninth Circuit cases are *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) and *Brink v. Comm'r of the Soc. Sec. Admin.*, 343 F. App'x 211 (9th Cir. 2009) (unpublished).  In *Stubbs-Danielson*, a doctor who evaluated the claimant found that she was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods."  *Stubbs-Danielson*, 539 F.3d at 1173.  A state reviewing psychologist subsequently concluded that the claimant could perform simple work without public contact.  *Id.* at 1171.  Based on this evidence, the ALJ adopted an RFC that limited Petitioner to "routine, repetitive" work requiring no interaction with the public.  *Id.* at 1173.  The claimant challenged the RFC on appeal, arguing that that it failed to capture the deficiencies in pace observed by the evaluating doctor.  *Id.*  The Ninth Circuit rejected this position.  The Court reasoned that the ALJ had fairly translated the claimant's mental limitations into the "only concrete restrictions" identified in the medical testimony, namely the limitation to simple tasks. *Id.* at 1175.

A year later, in *Brink*, the Ninth Circuit reached the opposite result in response to a similar challenge.  In *Brink*, the ALJ accepted medical evidence showing that the claimant had "moderate difficulty maintaining concentration, persistence, or pace."  *Brink*, 343 F. App'x at 212.  The ALJ integrated this finding into the RFC by limiting the claimant to "simple, repetitive

**MEMORANDUM DECISION AND ORDER - 8**

work." *Id.*  The Ninth Circuit found that this was insufficient and that the RFC "should have included not only the limitation to 'simple, repetitive work,' but also [the claimant's] moderate limitations in concentration, persistence, or pace." *Id.*  The Court distinguished *Stubbs-Danielson* as follows:

> In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." *Id.* at 1174. The medical testimony in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that [the claimant] does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite.

*Id.*

In the decade and a half since *Stubbs-Danielson* and *Brink*, nonbinding decisions about this issue have proliferated.  *Valerie C. v. Berryhill*, No. 5:17-CV-02209-GJS, 2019 WL 450675, at *3 (C.D. Cal. Feb. 5, 2019) (calling the distinction between *Stubbs-Danielson* and *Brink* a "well-worn track").  Some follow *Brink* blindly without acknowledging *Stubbs-Danielson*.  *See, e.g.*, *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) (unpublished).  Some interpret *Stubbs-Danielson* narrowly in light of *Brink*.  *See, e.g.*, *Smith v. Berryhill*, No. 17-CV-02108-CAB-RNB, 2018 WL 6062463, at *4 (S.D. Cal. Nov. 20, 2018), report and recommendation adopted, 2018 WL 6446001 (S.D. Cal. Dec. 10, 2018) (holding that only medical professionals, not ALJs, are qualified to make the determination that a limitation to unskilled work adequately reflects a finding of a moderate limitations in concentration, persistence, or pace).  Others apply *Brink* narrowly, only where a simple work limitation would not adequately address a particular claimant's personal situation.  *See, e.g.*, *Juanita S. v. Berryhill*, No. CV 17-7659 MRW, 2018 U.S. Dist. LEXIS 163468, *6 (C.D. Cal. Sept. 24, 2018) (while an ALJ can generally "account for a claimant's moderate functional limitations" with a

**MEMORANDUM DECISION AND ORDER - 9**

simple work limitation, there are exceptions). Finally, there is a contingent that criticizes and declines to follow *Brink*. *See*, *e.g.*, *Theresa E. v. Berryhill*, No. CV 17-5583 FFM, 2019 U.S. Dist. LEXIS 1872, *14 (C.D. Cal. Jan. 3, 2019) (concluding that *Brink* directly conflicts with *Stubbs-Danielson*); *Venedicto v. Kijakazi*, No. 1:21-CV-00851-GSA, 2022 WL 4537902, at *12 (E.D. Cal. Sept. 28, 2022) (noting that "there is no guidance from any controlling case law, social security ruling, or regulation as to how specifically an ALJ ought to concretely translate moderate concentration, persistence and pace limitations into the RFC . . ."); R*owe v. Comm'r of Soc. Sec. Admin.*, No. CV-17-02558-PHX-GMS, 2018 WL 6168011, at *5 (D. Ariz. Nov. 26, 2018) (calling *Brink* "an outlier").

The Court agrees that *Brink* should not be read expansively.[2] The Court, however, need not stake ground on the outer boundaries of *Stubbs-Danielson* or *Brink*.

---

[2] The reasons for discounting *Brink* are threefold. First, *Brink* is not binding whereas *Stubb-Danielson* is. Second, the reasons *Brink* provides for deviating from *Stubbs-Danielson* are flawed. *Curtin v. Colvin*, No. EDCV 14-2551-JPR, 2016 U.S. Dist. LEXIS 61973, *20 (C.D. Cal. May 9, 2016) ("*Brink's* conclusion that there was no medical testimony of limitations in concentration, persistence, and pace in *Stubbs-Danielson* overlooks express language in *Stubbs-Danielson* to the contrary") (internal citation omitted). Finally, a broad application of *Brink* would stand in tension with the rule that ALJs bear primary responsibility "for translating and incorporating clinical findings into a succinct RFC." *See Rounds v. Comm'r of SSA*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2018) (an ALJ's findings were entitled to deference where there was "no obvious inconsistency" between the medical opinions – which found moderate social limitations – and the RFC which concluded the claimant was capable of occasional interaction with coworkers). The Court suspects that it is some combination of these reasons that have led multiple Ninth Circuit panels to ignore *Brink* and rely exclusively on *Stubbs-Danielson* to find that "simple, routine work" may reasonably account for moderate concentration, persistence, and pace limitations if the medical record supports the RFC. *See Turner v. Berryhill*, 705 F. App'x 495, 498 (9th Cir. 2017) (a limitation to "simple, repetitive tasks" adequately captured limitations in concentration, persistence, or pace); *Israel v. Astrue*, 494 F. App'x 794 (9th Cir. 2012) (same); *Sabin v. Astrue*, 337 F. App'x 617, 620-621 (9th Cir. 2009) (same); *Wilder v. Comm'r of SSA*, 545 F. App'x 638, 639 (9th Cir. 2013) (same).

**MEMORANDUM DECISION AND ORDER - 10**

As Petitioner recognizes, this Court is bound to follow *Stubbs-Danielson* where it is directly on point. This is one such case. Like in *Stubbs-Danielson*, the reviewing and examining doctors agreed that Petitioner had limitations in his ability to concentrate, persist, and maintain pace. AR 148, 193, 703-704. Specifically:

- On November 30, 2020, Dr. Stephenson reviewed Petitioner's medical records and concluded that Petitioner was moderately limited in two domains, including his ability to concentrate, persist, or maintain pace. AR 148-149.

- On May 26, 2021, Dr. Heckard evaluated Petitioner in person. Dr. Heckard found that Petitioner presented with "mental status features which could hinder" among other things" Petitioner's "ability to maintain uninterrupted attention, concentration, or persistence with personal or work-related activities." AR 703-704. Dr. Heckard did not quantify or rate the severity of these limitations. *Id.*

- Finally, on June 4, 2021, Dr. Greenspan reevaluated Petitioner's medical records at the reconsideration level. AR 193. Dr. Greenspan found Dr. Heckard's report "persuasive" and consistent with Dr. Stephenson's ratings. AR 195, 203. Dr. Greenspan, consequently, endorsed the view that Petitioner was moderately limited in his ability to concentrate, persist, and maintain pace. AR 193.

The only doctors to consider the impact of these limitations on Petitioner's ability to perform simple, routine work were the reviewing psychologists – Drs. Stephenson and Greenspan. AR 154-158, 200-203, 701, 703-704. As in *Stubbs-Danielson,* Drs. Stephenson and Greenspan

**MEMORANDUM DECISION AND ORDER - 11**

found that Petitioner maintained the ability to perform simple, routine work despite having moderate limitations in concentration, persistence, and pace.[3]

Under *Stubbs-Danielson*, Drs. Stephenson and Greenspan's prior administrative medical findings constitute adequate support for the ALJ's RFC. *See Stubbs-Danielson*, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."); *see also Olinger v. Saul*, No. 1:18-CV-00142-REB, 2019 WL 4739287, at *9 (D. Idaho Sept. 27, 2019) ("the ALJ's limitation to 'simple, routine tasks' adequately captured [the petitioner's] moderate difficulties with concentration, persistence, or pace because the consultants' opinions on which the ALJ relied recommended such a limitation despite finding moderate difficulties in the same areas"). Petitioner's assertion of a *Brink* error, consequently, fails.

       *c. Petitioner's Challenge to the ALJ's Evaluation of Dr. Heckard's Opinion*

Petitioner's second augment on appeal is that the RFC is invalid because the ALJ failed to discuss or evaluate the portions of Dr. Heckard's report that address Petitioner's mental status. Pt.'s Br. at 9-10 (Dkt. 15). This argument ignores critical portions of the ALJ's decision. As outlined above, the ALJ considered Dr. Heckard's neurological examination when he evaluated the severity of Petitioner's mental health conditions at Steps Two and Three. AR 27-28. While

---

[3] Petitioner overlooks these aspects of Drs. Stephenson and Greenspan's opinions. This may be because locating Drs. Stephenson and Greenspan's mental RFC requires a two-step process. In the narrative section of the mental RFC form, instead of writing out their findings, Drs. Stephenson and Greenspan adopted, by reference, the ALJ's decision from Petitioner's first attempt to obtain disability benefits. AR 154-158 and 200-203. Critically, this RFC states that Petitioner can perform "simple, routine tasks." AR 121. In his conclusion, Dr. Greenspan translated these findings into this own words, noting that a mental RFC for "unskilled routine work" was "correct." AR 192.

**MEMORANDUM DECISION AND ORDER - 12**

the ALJ did not address Dr. Heckard's statements about Petitioner's mental health a second time, when analyzing the persuasiveness of Dr. Heckard's opinions, Petitioner has not shown that the absence of this discussion constitutes reversible error.

The regulations that govern the evaluation of medical opinion evidence permit an ALJ to address multiple opinions from a single medical source in one analysis. 20 C.F.R. § 404.1520c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation). An ALJ need not articulate how he considers each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis. *Id.*

There may be situations where source-level articulation does not excuse an ALJ's failure to discuss a critical medical opinion. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (the Secretary may not reject "significant probative evidence" without explanation). But this is not a case where the ALJ ignored or rejected evidence that could have supported a finding of disability. At Step Three, the ALJ discussed Dr. Heckard's mental-health-related opinions and observations. The ALJ found that these portions of Dr. Heckard's opinions were consistent with Petitioner suffering mild to moderate mental limitations, including moderate limitations in concentration, persistence, and pace. AR 27-28. At the next step of the sequential process, the ALJ incorporated Petitioner's mild and moderate mental limitations into the RFC in the manner suggested by the agency reviewers. *See* AR 29, 33 (noting that the RFC assessment "reflects the degree of limitation" found in the paragraph B analysis). More exacting articulation was not legally required. *See* 20 C.F.R. § 404.1520c(b)(1); *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (while an ALJ is required to discuss and evaluate evidence that supports his conclusions, he is not required to do so under any specific heading).

**MEMORANDUM DECISION AND ORDER - 13**

Even if it was, the Court agrees with Respondent that any technical error in the ALJ's level of articulation was harmless. *See Ludwig*, 681 F.3d at 1053 (reversal on account of error is not "automatic," but requires a "case-specific" determination of prejudice). The ALJ accounted for Dr. Heckard's observations when he evaluated the severity of Petitioner's mental limitations and then drafted an RFC intended to reflect these limitations. AR 27-29. There is no reason to believe that a more detailed discussion of Dr. Heckard's opinions would have resulted in a different outcome.

II. <u>Petitioner's Postural Limitations</u>

Petitioner's final argument on appeal relates to Dr. Heckard's opinions about his physical health. Pt.'s Br. at 14-15 (Dkt. 15). In the conclusion section of his report, Dr. Heckard wrote that Petitioner's vision and neurological conditions "would likely limit" Petitioner's "tolerance for engaging in prolonged standing or balancing." AR 704. Petitioner contends that the ALJ erred when he discounted this opinion as vague, "without engaging in any supportability or consistency analysis." Pt.'s Br. at 15 (Dkt. 15).

Petitioner once again demands more than the law compels. An ALJ is not required to expatiate for pages on every line of every medical opinion in the record. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.") As the Court has already discussed, the regulations contemplate that ALJs will evaluate the persuasiveness of medical opinions at a source-level, not an opinion-level. 20 C.F.R. § 404.1520c(b)(1). A quick thought experiment shows the wisdom of this approach. Here, Dr. Heckard opined that Petitioner's conditions would limit his ability to: (i) navigate complex physical environments, (ii) safely and efficiently operate higher-speed machinery, tools,

**MEMORANDUM DECISION AND ORDER - 14**

equipment, or motorized vehicles, (iii) perform jobs requiring vision in both eyes, (iv) engage in prolonged standing or balancing, (v) climb ladders or scaffolds, (vi) perform "heavier carrying" over irregular surfaces, and (vii) frequently squat, stoop, crouch, or crawl.  AR 704.  Individually analyzing the supportability and consistency of each of these opinions in writing, and then doing the same thing for every other medical opinion in the record, including Dr. Heckard's mental status opinions, would turn the ALJ's decision into a novella.

Neither the Ninth Circuit nor the regulations require such a result.  20 C.F.R. § 404.1520c(b)(1); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal citation omitted).  Unless the regulations require more detailed articulation – which is not the case here – the touchstone for whether an ALJ sufficiently explained his decision is whether the reviewing court can reasonably follow the ALJ's reasoning and provide meaningful judicial review.  *Treichler*, 775 F.3d at 1103 and *Molina,* 674 F.3d at 1121.  The ALJ satisfied this standard.

In the section of the decision justifying the RFC, the ALJ acknowledged Petitioner's claim that he could only stand and walk for 10 minutes at a time.  AR 30.  The ALJ also acknowledged Dr. Heckard's more moderate, but partially supporting opinion.  AR 33.  The ALJ provided a multi-paragraph discussion explaining why he was not crediting this evidence and was instead finding that Petitioner could stand, walk, and otherwise work at the level necessary for a subset of light work.  AR 30-33.  The evidence the ALJ cited to support this conclusion included:

- The majority of normal physical examinations, showing no neurological abnormalities and a normal unassisted gait (AR 30);

**MEMORANDUM DECISION AND ORDER - 15**

- Petitioner's "broad range" of reported activities, including performing household chores, using a water trailer, exercising regularly, engaging in outdoor activities, building things, and working full time in the summer of 2020 (AR 31);

- Petitioner's lack of recent seizures (AR 31);

- The vagueness of Dr. Heckard's opinion (AR 33); and

- The persuasiveness of the opinions of the reviewing doctors, Michael Spackman, M.D. and Lee Lindquist, M.D., who both found that Petitioner could walk and stand sufficiently long to engage in light work (AR 32-33, 150, 196).

Taken together, this discussion was more than sufficient to allow the Court to understand the ALJ's reasoning. Petitioner's assertion that the ALJ failed to adequately discuss Dr. Heckard's opinion does not provide a basis for remand.

To extent Petitioner intended to lodge a substantive attack on the ALJ's conclusion that he can "stand and/or walk for six hours in an eight-hour workday," Petitioner has not developed such a challenge. Petitioner's discussion of his physical health focuses exclusively on the level of articulation the ALJ afforded Dr. Heckard's opinions. Petitioner never discusses the substance of the ALJ's findings and does not make any attempt to show that it was unreasonable for the ALJ to credit the reviewing agency doctors' opinions over Dr. Heckard's conflicting statements about Petitioner's ability to stand and walk. The Court does not believe such a challenge would be successful. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (as long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (when diverging medical opinions provide substantial evidence for two different conclusions, it "solely the province of the ALJ to resolve the conflict"). But this is ultimately beside the point; Petitioner

**MEMORANDUM DECISION AND ORDER - 16**

waived any substantive challenge to the ALJ's physical findings by failing to raise or develop these issues in the briefing. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (on appeal, the court only reviews "issues which are argued specifically and distinctly in a party's opening brief;" it does not "manufacture arguments for an appellant").[4]

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 15) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: April 04, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

---

[4] As numerous courts have warned, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). This principle applies with double force to evidence "buried in disorganized, scattershot evidentiary submissions" such as the Administrative Record. *See Faulkner v. Wausau Bus. Ins. Co.*, 571 F. App'x 566, 569 (9th Cir. 2014) (unpublished). To preserve a challenge to an ALJ's credibility findings, it is Petitioner's responsibility to develop that challenge with citations to the law and the record. *Carmickle v. Comm'r of Social Sec. Admin*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008); *see also Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020) (unpublished) (a summary assertion of error was insufficient to preserve an issue for review).

**MEMORANDUM DECISION AND ORDER - 17**